IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-01293-MSK-KMT

BOLSA RESOURCES, INC., an Arizona corporation,

        Plaintiff,

v.

AGC RESOURCE, INC., a Nevada corporation;
ALPACA RESOURCES, INC., an Ontario, Canada corporation;
INTERNATIONAL AMERICAN RESOURCE, INC., a Colorado corporation;
MARTIN RESOURCES, INC., a Colorado corporation;
SALZBURG HOLDINGS, LLC, a Colorado limited liability company;
DAVID STAFFORD JOHNSON, a Colorado resident;
STEPHEN B. DOPPLER, a Colorado resident;
FREDERIK W. WARNAARS, a Colorado resident;
ADAM SZWERAS, an Ontario, Canada resident;
YANNIS BANKS, an Ontario, Canada resident;
FOUNDATION MARKETS, INC., an Ontario, Canada corporation;
ARIZONA-ALPACA RESOURCE CORP. , a Nevada corporation;
SOGC RESOURCE CORP., a Nevada corporation;
JNS MINERAL HOLDING CORP., a Nevada corporation; and
JEREMY GOLDMAN, an Ontario, Canada resident,

        Defendants.

---

## ORDER ON MOTIONS TO DISMISS

**THIS MATTER** is before the Court on

(1) Defendants Frederik Warnaars and International American Resources, Inc.'s Motion to Dismiss Verified Amended Complaint (**#49**), to which the Plaintiff responded (**#66**);

(2) Defendant David Stafford Johnson's Motion to Dismiss (**#50**), to which the Plaintiff responded (**#69**) and Mr. Stafford replied (**#85**); and

(3) Defendant Jeremy Goldman's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) (**#52**),

to which the Plaintiff responded (#**108**) and Mr. Goldman replied (#**110**).   Having considered

the same, the Court **FINDS** and **CONCLUDES** as follows.

## I.   Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II.   Background

The claims in this case arise out of a series of transactions relating to certain mining

claims and associated research and data originally owned by the Plaintiff, Bolsa Resources, Inc.

("Bolsa").  These claims were transferred to subsidiaries of its competitor, Alpaca Resources,

Inc. ("Alpaca").  The Defendants are former Bolsa principals/consultants who allegedly effected

these transactions and various individuals and entities associated with Alpaca.

The Amended Verified Complaint (#**44**), which is construed in the light most favorable

to Bolsa as the plaintiff and non-moving party, alleges as follows.

### 1.      Bolsa and its Former Directors

Bolsa is an Arizona corporation with its principal place of business in Ibiza, Spain; the

company is primarily managed from Europe.  Founded in 2005, Bolsa was created to develop

and exploit mineral resources in the Turquoise Mining District of Cochise County, Arizona (the

"Project").  As of 2009, Bolsa had acquired a number of patented and unpatented mining claims

and surface interests in the area.  In addition, it had conducted extensive geologic exploration

and other research, resulting in data and materials related to the Project that included core

samples, assays, drill logs, analytical results, cross-section maps, ore body assessments, and

other geologic information.

At the time of its founding in 2005, Bolsa was owed by an entity called Aurelio Resource

Group. Bolsa's initial board of directors included Defendants Johnson, Doppler, and Warnaars. In 2009, Bolsa was acquired by Telifonda (Cayman) Ltd. ("Telifonda"). After the acquisition, Mr. Johnson, Mr. Doppler and Mr. Warnaars resigned from Bolsa's board of directors, leaving Frank Vermeulen as the sole director from February 2009 to April 2010.[1]

After resigning from Bolsa's board, Mr. Johnson, Mr. Doppler, and Mr. Warnaars continued to be associated with Bolsa. Mr. Johnson, a lawyer who had previously served as Bolsa's general counsel, entered into a contract with Bolsa to provide advice and legal services for a monthly fee. Mr. Warnaars and International American Resource, Inc. ("IAR"), a company of which he was the principal, entered into consulting agreements with Bolsa to provide business services and advice. Similarly, Mr. Doppler and his associated company, Salzburg Holdings LLC ("Salzburg"), entered into consulting agreements with Bolsa. These agreements, entitled "Executive Consulting Agreements," contain comprehensive non-disclosure and non-competition provisions.

At the same time, Mr. Doppler, Mr. Johnson, and Mr. Warnaars were associated with another company called Martin Resources, Inc., ("MRI"), which appears to be unrelated to Bolsa. Mr. Johnson and Mr. Warnaars were officers and directors of MRI and Mr. Johnson served as MRI's legal counsel. Mr. Johnson, Mr. Doppler, Mr. Warnaars, and their associated entities (IAR, Salzburg, and MRI) are all citizens of Colorado and are hereinafter referred to collectively as the "Colorado Defendants."

### 2.    Transfer of the Assets and Data

Bolsa alleges that in February 2010, Mr. Johnson, while still in a confidential relationship

---

[1]Thereafter, two additional directors were appointed to the board.

with Bolsa, falsely advised Mr. Warnaars that Bolsa had been statutorily dissolved and that its assets were in foreclosure.  Mr. Johnson then drafted deeds by which Mr. Warnaars, named in the documents as president of Bolsa, transferred a number of Bolsa's mining claims and other assets to Mr. Warnaars' entity, IAR.  Purportedly, the Bolsa board approved the transactions as reflected in board minutes signed by Mr. Warnaars; however, at such time Mr. Warnaars was neither an officer nor director of Bolsa and no board meeting actually occurred.  Indeed, these transactions were not known to Mr. Vermeulen, the only director of Bolsa's board at the time.

Once the claims were transferred to MRI, Mr. Johnson and MRI then began to market the Project and to solicit third-party investors, using some of the Project data to assist in the marketing effort.  In June 2010, MRI entered into an agreement with Defendant Arizona-Alpaca Resource Corporation ("AARC"), a subsidiary of Alpaca, and Alpaca to jointly develop the Project; pursuant to this agreement, which was signed by Mr. Warnaars, MRI agreed to convey certain of the Project claims and information relating to those claims to AARC.  Mr. Johnson became an officer at Alpaca in July 2010.

As part of the joint venture, a number of Alpaca subsidiaries were created as holding companies for the assets.  MRI conveyed some of the Project assets to AGC Resources, Corp. ("AGC"), one of the Alpaca subsidiary holding companies.  Other mining claims important to the Project were acquired by other Alpaca subsidiaries at foreclosure auctions, allegedly based upon confidential information and Project data supplied by the Colorado Defendants.[2]  At some

---

[2]It is alleged that several of the Colorado Defendants had copies of the materials on their personal computers.  In addition, in June 2010, Bolsa's offices were broken into and much of its Project data were removed and/or copied.  Bolsa alleges that Mr. Doppler and Mr. Johnson copied Bolsa's Project data and materials and delivered the information to Alpaca and/or its principals and/or affiliated companies.

Case 1:11-cv-01293-MSK-KMT   Document 123   Filed 12/20/11   USDC Colorado   Page 5 of 31

time between June and October 2010, Mr. Johnson leased to, and then sold, a parcel of real property in Arizona (the "Elfrida Property")[3] to AGC.

Bolsa's Amended Verified Complaint (#**44**) ("Complaint"), which now governs this litigation, articulates several claims for relief: (1) breach of contract against Defendants IAR, Salzburg, Johnson, Doppler, and Warnaars; (2) breach of duty of good faith and fair dealing against the same Defendants; (3) breach of fiduciary duty against Defendant Johnson; (4) fraud by non-disclosure or concealment against all Defendants; (5) tortious interference with contract against all Defendants; (6) tortious interference with prospective business advantage against all Defendants; (7) negligence/legal malpractice against Defendant Johnson; (8) unjust enrichment against all Defendants; (9) conversion against all Defendants; (10) recovery of stolen property and damages (civil theft remedy under C.R.S. § 18-4-405); (11) theft/destruction of trade secrets and proprietary information against all Defendants; (12) civil conspiracy against all Defendants; and (13) violation of the Colorado Organized Crime Control Act ("COCCA"). Bolsa seeks damages and injunctive relief.

The three motions to dismiss are all based on different arguments and are therefore addressed separately. Additional facts relevant to each motion are set forth in the discussion.

### III. Defendants Frederik Warnaars and International American Resources, Inc.'s Motion to Dismiss Verified Amended Complaint (#49)

Mr. Warnaars and IAR (the "Warnaars Defendants") move for dismissal of some, but not all, of the claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, they

---

[3]This parcel had been acquired for Bolsa in 2007 to use as a field office for the Project. Bolsa alleges that Mr. Johnson fraudulently obtained title to the Elfrida Property by way of self-interested and/or undisclosed transactions.

seek dismissal of the Second (breach of duty of good faith and fair dealing), Eighth (unjust enrichment), Ninth (conversion), Tenth (civil theft), Eleventh (trade secrets), and Thirteenth (COCCA) claims for relief on the grounds that the allegations are insufficient to demonstrate the required elements of each claim.

## A.      Standard of Review

There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556).  Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## B.      Analysis

The sufficiency of the allegations underlying each claim are examined as follows.

### 1.      Breach of duty of good faith and fair dealing (Second Claim)

A party asserting a breach of contract claim must allege facts sufficient to establish the

following elements: (1) the existence of a contract, (2) performance by the plaintiff or that the performance is excused, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992) (internal citations omitted).[4]  Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  "The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations." *Id.*  It applies when one party "has discretionary authority to determine certain terms of the contract, such as quantity, price, or time" but does not override express terms and conditions. *Id.*

The Warnaars Defendants assert that Bolsa has not stated a claim for breach of the duty of good faith and fair dealing because the Executive Consulting Agreement on which it is based does not confer discretion on the Warnaars Defendants.  The agreement is attached to the Amended Verified Complaint and therefore its terms are part of the allegations.  The agreement contains numerous provisions requiring the Warnaars Defendants to use "reasonable best efforts" and to "provide assistance and guidance," all of which plausibly implicate discretion in

---

[4]Although no party provides a choice of law analysis, Bolsa and the Warnaars Defendants have cited Colorado law in support of their arguments.  The Court sees no reason to apply any other state's law in this dispute and so the analysis will proceed under Colorado state law.  In diversity cases, the forum state's choice of law rules govern. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Under Colorado law, the law of the state with the most significant relationship to the claims will be used for both tort and contract actions. *ITT Specialty Risk Services v. Avis Rent A Car Systems, Inc.*, 985 P.2d 43, 47 (Colo. App. 1998).  It appears the Warnaars Defendants are both Colorado citizens.  No other single forum appears to have a greater relationship to the dispute as the other parties are citizens of Colorado, Arizona or Canada.  Although the Project involved property located in Arizona, it is not clear where much of the alleged wrongdoing occurred.  In the absence of a dispute on the issue and given that Bolsa has pled claims for relief under Colorado statute, the Court will apply the parties' implicit choice of Colorado law.

the performance of services. Therefore, if these Defendants did not exercise their discretion in good faith with respect to how they performed services under the agreements, Bolsa may be able to establish a claim that this implied duty was breached. Construing the allegations in the light most reasonable to Bolsa, the breach of good faith and fair dealing claim should not be dismissed.

### 2.     Unjust enrichment (Eighth Claim)

To state a claim for unjust enrichment, a plaintiff must establish the following elements: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation. *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (citation omitted). "The claim of unjust enrichment is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another. Unjust enrichment is based on principles commonly associated with restitution." *Id*. "Unjust enrichment may be appropriate when '[t]he defendant's wrongful act may be a common-law tort, such as conversion of personal property or trespass to land, or it may be an equitable wrong such as breach of trust or other fiduciary obligation.'" *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo.App. 2009) (citations omitted).

The Warnaars Defendants argue that Bolsa fails to state a claim because there are insufficient allegations that they received or retained a benefit from the transactions at issue. Bolsa has alleged that the Warnaars Defendants received a benefit at the expense of Bolsa in the conveyance of the mining properties and other real estate and access to trade secrets and other proprietary information related to the Project. Complaint ¶ 131. As discussed below, the Plaintiff has adequately stated a claim for conversion of Bolsa's assets and data. To the extent

that the Warnaars Defendants receive proceeds as a result of the development of the Project as a result of that conversion, Bolsa may be entitled to a remedy under an unjust enrichment theory in that those proceeds are a benefit unjustly received at Bolsa's expense.[5]

### 3.      Conversion (Ninth Claim)

"A 'conversion' is defined to be any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his right of property."  *Keith v. Kinney*, 140 P.3d 141 (Colo. App. 2005) (quoting *Omaha & Grant Smelting & Refining Co. v. Tabor*, 13 Colo. 41, 54-55, 21 P. 925, 930 (1889)); *see also Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956) (common-law conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.").  Conversion "is distinct from the crime of theft in that it does not require that a wrongdoer act with the specific intent to permanently deprive the owner of his property."  *Itin v. Ungar*, 17 P.3d 129, 135 n. 10 (Colo. 2000).

Bolsa alleges that the Defendants converted the Project data and other materials and have refused to return it.  The Warnaars Defendants contend that the allegations are insufficient to show that they personally exercised dominion or control over any Project data.  However, the Complaint alleges that pursuant to the June 2010 acquisition/joint venture agreement between MRI and Alpaca/AARC, MRI is required to transfer the Project data, which is at least suggestive that the Warnaars Defendants had the Project data to transfer.  Mr. Warnaars signed the

---

[5]However, because unjust enrichment is an equitable remedy, it is inapplicable if Bolsa has an adequate remedy at law, such as damages for breach of contract or other tort remedies. *Harris Group*, 209 P.3d at 1205.  Nonetheless, since parties are permitted to plead in the alternative the claim may go forward.

agreement on behalf of MRI.  Granting Bolsa the benefit of all reasonable inferences, this is

sufficient to show conduct whereby the Warnaars Defendants[6] purported to assert control over

and title to the data inconsistent with Bolsa's claim of ownership.  Therefore, the claim should

not be dismissed.

### 4.      Civil theft (Tenth Claim)

Under Colorado statute, the owner of property may institute a civil action to recover

treble damages for the value of the property if the defendant obtained the property by theft.

C.R.S. § 18-4-405.  A defendant commits theft if he or she knowingly obtains or exercises

control over anything of value of another without authorization, or by threat or deception, and (a)

intends to deprive the other person permanently of the use or benefit of the thing of value; or (b)

knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other

person permanently of its use or benefit; or (c) uses, conceals, or abandons the thing of value

intending that such use, concealment, or abandonment will deprive the other person permanently

of its use and benefit; or (d) demands any consideration to which he is not legally entitled as a

condition of restoring the thing of value to the other person.  C.R.S. § 18-4-401.

The Warnaars Defendants argue that Bolsa's allegations are insufficient to show that the

Warnaars Defendants intended to permanently deprive Bolsa of the Project data or assets.

Specifically, the Warnaars Defendants contend that there are insufficient facts alleged to show

that they were involved in the theft of the Project data.  However, as noted above, the Complaint

---

[6]The Warnaars Defendants do not distinguish claims asserted against Mr. Warnaars and IAR.  Because it is unclear whether Mr. Warnaars might been acting in a representative capacity for Defendant IAR in some of this conduct and no specific argument has addressed the issue, the claim remains pending as to IAR as well.

sufficiently alleges that Mr. Warnaars executed agreements by which MRI promised to convey the Project data to Alpaca and Alpaca's holding companies, which permanently deprives Bolsa of the benefit of those assets.  Moreover, the Complaint alleges that Mr. Warnaars signed the deeds transferring the mining claims from Bolsa to IAR, which were thereafter transferred to MRI and then to one of the Alpaca holding companies.  These facts sufficiently allege conduct amounting to theft of Bolsa's property.

### 5.      Theft/destruction of trade secrets (Eleventh Claim)

Trade secrets are protected under Colorado law by statute.  "Misappropriation" is defined in pertinent part as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." C.R.S. § 7–74–102(2)(a).  There is no requirement that the trade secret be used by the defendant, only that the trade secret be improperly disclosed or acquired.  *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1290 (Colo. App. 2001).

The Warnaars Defendants argue that the Complaint does not sufficiently allege that they disclosed or used Bolsa's trade secrets without consent because only Defendants Johnson and Doppler are alleged to have improperly copied or stolen the Project data.  As noted above, however, the Complaint adequately alleges Mr. Warnaars' involvement in the purported transfer of this material to Alpaca and/or its holding companies pursuant to an agreement he signed, which is sufficient to demonstrate improper acquisition and disclosure.  This claim, therefore, remains pending.

### 6.      COCCA (Thirteenth Claim)

Finally, the Warnaars Defendant move for dismissal of the COCCA claim on the grounds

that the allegations are insufficient to demonstrate two or more predicate acts.  However, as discussed above, the Complaint sufficiently alleges conduct amounting to theft, which may qualify as a predicate act.  In addition, as noted by Bolsa, acts committed by other participants in the alleged enterprise may be sufficient to allege a violation.  The Complaint alleges sufficient predicate wrongful acts by the Defendants for this claim to go forward.

### IV.  Defendant David Stafford Johnson's Motion to Dismiss (#50)

Mr. Johnson moves to dismiss claims relating to his performance of legal services[7] on the grounds that they are subject to arbitration pursuant to agreement.  Mr. Johnson and Bolsa entered into an agreement dated March 1, 2009 whereby Mr. Johnson was retained to act as an "advisor providing certain transaction and legal assistance and for other business purposes." Exh. 1 to Mot. to Dismiss (#**50-1**).  That agreement contains the following provisions regarding dispute resolution:

> It is [Mr. Johnson's] desire to resolve any disagreements as to fees or services performed by frank and amicable discussion with [Bolsa].  If any dispute cannot be so resolved, in the interest of prompt, confidential and inexpensive resolution, [Bolsa] and [Mr. Johnson] agree that any dispute which might arise concerning the interpretation of the terms of this Agreement shall be resolved by the parties through binding arbitration.  The parties agree to submit any issues in dispute to an arbitrator (or panel of arbitrators) agreed by both parties in Denver, Colorado, with the arbitration governed by the rules of the American Arbitration Association.

*Id*.

### A.    Applicable Law

---

[7]Specifically, he seeks to refer to arbitration the First (breach of contract), Second (breach of duty of good faith and fair dealing), Third (breach of fiduciary duty), and Seventh (negligence/legal malpractice) claims for relief.

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4. The FAA mandates a stay of a judicial proceeding where the parties have executed a written arbitration agreement covering the dispute. 9 U.S.C. § 3.[8] The Court is authorized by 9 U.S.C. § 4 to compel arbitration when it would have jurisdiction over a suit on the underlying dispute. *See generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-27 (1983).

Whether parties have agreed to arbitration, and the scope of that agreement, is generally determined under contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Again, the parties appear to agree that Colorado contract law should apply here in determining the existence of an agreement to arbitrate and the scope of that agreement.[9] Under Colorado law, interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

"The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004) (quotations omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not

---

[8]Assuming this Court were to find that the claims are subject to arbitration, 9 U.S.C. § 3 directs that the Court stay this action while arbitration proceeds. Therefore, although the motion is styled as a motion to dismiss, the only relief available to Mr. Johnson is a stay of litigation of the claims pending arbitration.

[9]The letter agreement states that it is to be governed in accordance with the State of Colorado, which supports the application of Colorado law.

13

agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted).

Unless the parties to an agreement "clearly and unmistakably" provide otherwise, the question of "arbitrability," that is, whether the contract requires the parties to arbitrate a particular claim or grievance, is an issue for judicial determination. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010) (citations omitted). In determining whether a claim is arbitrable, the Court must examine the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains. *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009). In general, to determine whether a dispute falls within an arbitration clause, the Court should first classify the particular clause as either broad or narrow. *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (citation omitted). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id*. (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001)). "Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview." *Id*.

**B.     Analysis**

As the party seeking to enforce the arbitration provision, Mr. Johnson has the burden of establishing the existence of a valid arbitration agreement that covers the claims at issue. *GATX Mgmt. Servs., LLC v. Weakland*, 171 F.Supp.2d 1159, 1162 (D. Colo. 2001). Bolsa does not

14

dispute that the agreement is enforceable[10] and that the arbitration clause is valid. However, Bolsa contends that the clause is narrow - limited to fee disputes and issues pertaining to the nature and scope of representation described in the letter- and that the claims at issue do not fall within that scope. In addition, it argues that some of the claims are based on conduct occurring before execution of the letter agreement. Mr. Johnson argues that the clause is broad and encompasses all of the claims relating to his provision of legal services. He further contends that under the letter agreement, the parties agreed to remove the question of arbitrability from the Court to the arbitrator.

Therefore, as presented, the issues for determination are as follows: (1) under the agreement, whether the Court or the arbitrator has authority to determine whether particular claims are arbitrable; (2) if the issue is for the Court, whether the arbitration agreement broad or narrow; and (3) which, if any, claims fall within the scope of the arbitration clause.

**1.      Did the Parties Agree to Refer Questions of Arbitrability to the Arbitrator?**

The question of whether the parties agreed to refer questions of arbitrability to the arbitrator implicates the Court's jurisdiction and so must be addressed as a threshold matter.

Mr. Johnson argues that because the parties agreed to arbitrate "any dispute which might arise concerning the interpretation of the terms of this Agreement" as well as "any dispute," this language includes the scope of the arbitration provision itself. As noted above, questions of arbitrability are generally decided by a court unless the agreement "clearly and unmistakably" provides otherwise. Here, there is no express reference to the threshold issue of arbitrability or a

---

[10]Indeed, Bolsa seeks to enforce the letter agreement in its breach of contract claims against Mr. Johnson.

clear election in this regard.  Rather, the language contains a general reference to the contract and disputes; this is insufficient to override the general principle that questions of arbitrability are matters of judicial interpretation.  The Court concludes that the agreement does not evidence a clear and unmistakable intent by the parties to have the arbitrator, rather than the Court, determine questions of arbitrability.

Therefore, the analysis proceeds to the interpretation of the arbitration agreement.

**2.     Is this a broad or narrow arbitration clause?**

The dispute resolution paragraph of the letter agreement includes two sentences containing an agreement to arbitrate.  First, the parties agreed to resolve by arbitration "any dispute which might arise concerning the interpretation of the terms of this Agreement."  In the second sentence, the phrase is somewhat broader in that the parties agree to submit "any issues in dispute" to an arbitrator.  Bolsa points to the first sentence to argue that the arbitration clause is narrow, limited to only contract interpretation matters, while Mr. Johnson argues the second sentence is a broad arbitration clause encompassing any matter arising out of and relating to the contract.  However, in interpreting the contract, the effect of both sentences must be considered together and in the context of the full paragraph and contract.  *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984) (a contract "is to be interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.").

As noted by Mr. Johnson, the introduction of the dispute resolution paragraph sets forth Mr. Johnson's preference to resolve "any disagreements as to fees or services performed" through informal negotiation, which indicates an intent to focus dispute resolution matters on

such issues. This is then followed by sentence containing the agreement to submit "any dispute which might arise concerning the interpretation of the terms of this Agreement" to arbitration. These provisions can be harmonized by construing the second sentence to include the focus of the first, in other words, as an agreement to submit to arbitration disputes concerning the interpretation of the agreement *as to fees and services*.

The third sentence, however, contains a broader reference to "any issues in dispute." Mr. Johnson urges that this language should trump the more specific limitations of the previous two sentences. This reading, however, would render meaningless the first two sentences[11] and is contrary to the general principle of contract interpretation that specific clauses control over general. *Holland v. Board of County Commissioners*, 883 P.2d 500, 505 (Colo.App. 1994) ("specific clauses of a contract control the effect of general clauses"). Moreover, the sentence containing this phrase sets forth the rules and procedures under which arbitration shall proceed, including that the arbitration will take place in Denver and be governed by the rules of the American Arbitration Association. Rather than broadening the scope of the arbitration clause, this sentence is more appropriately read as explaining the process for referring to arbitration the "disputes" as defined in the two previous sentences (*i.e.*, disputes concerning the interpretation of the agreement as to fees and services). Under this construction, all three sentences are given effect in a manner that is consistent with the plain language of the agreement.

As so construed, this is not an agreement to submit to arbitration any issue relating to or arising out of the contract, as Mr. Johnson contends. Rather, it is more narrowly limited to

---

[11]Indeed, under Mr. Johnson's reading, the clause would be broad enough to encompass disputes not even related to the contract or the business relationship between the two parties; it seems unlikely that this was the intent of the parties in entering into the letter agreement.

disputes concerning matters of contract interpretation.  Therefore, only matters in dispute that on their face fall within the scope of the arbitration clause should be referred to arbitration and collateral issues should stay in this proceeding.

### 3.      Claims Subject to Arbitration

Mr. Johnson argues that First (breach of contract), Second (breach of duty of good faith and fair dealing), Third (breach of fiduciary duty), and Seventh (negligence/legal malpractice) claims for relief are all subject to the arbitration clause.  In response, Bolsa argues that none of the claims require any interpretation of the agreement and so do not fall within the clause.

The First and Second claims for relief allege that Mr. Johnson breached his obligations, including the implied duty of good faith and fair dealing, under the contract he had with Bolsa. This appears to refer to the letter agreement containing the arbitration clause.  Clearly, resolution of the question whether Mr. Johnson breached his obligations will require interpretation of contract provisions governing the services he would provide and his other obligations. Therefore, these claims for relief on their face fall within the arbitration agreement and should be stayed pending arbitration.[12]

The remaining claims, however, relate to legal duties owed by Mr. Johnson by virtue of his status in relation to Bolsa, *i.e.*, as counsel, officer, or other fiduciary of Bolsa.  Although the relationship may have been created by contract, the duties associated with the relationship are

---

[12]Bolsa argues that referring some claims to arbitration while leaving others pending in this matter will create inefficiencies and prolong resolution of the matter.  However, because arbitration is a matter of contract and Bolsa agreed to arbitration of these claims, this argument is unavailing.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (district court is required to compel arbitration of arbitrable claims even if the result is separate proceedings in different forums).

imposed by law, not by contract. *Moses v. Diocese of Colo.*, 863 P.2d 310, 322 (Colo.1993) (certain relationships give rise to a fiduciary duty as a matter of law, including attorney-client relationship). In addition, as noted by Bolsa, these claims are based in part on events that occurred before the execution of the letter agreement; there is no indication that the parties intended the arbitration agreement to apply retroactively. Because interpretation of the terms of the letter agreement is not required for resolution of the breach of fiduciary duty or negligence/legal malpractice claim, these claims are not subject to the arbitration agreement.

### V. Defendant Jeremy Goldman's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) (#52)

Mr. Goldman is the sole officer and director of the various Alpaca subsidiary holding companies created to further the joint venture between MRI and Alpaca. He moves to dismiss on the grounds that this Court lacks personal jurisdiction over him.

### A.    Applicable Law

The plaintiff has the burden of proving that personal jurisdiction over the defendant exists, although at preliminary stages of the litigation that burden is light. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). If the court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. *Id.* at 1056-57. In making this determination, all factual disputes should be construed in favor of the plaintiff. *Id.* at 1057.

For a court to exercise personal jurisdiction over a defendant, there must both a showing that (i) jurisdiction is proper under the laws of the forum state and (ii) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Benton v. Cameco*

*Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).  Colorado's long arm statute[13] is coextensive with the constitutional limitations imposed by the due process clause; therefore, the inquiry collapses into a single inquiry: whether jurisdiction is consistent with the due process clause.  *See id.*  This involves a two-step inquiry: (1) whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there"; and (2) if minimum contacts are found, whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *AST Sports Science*, 514 F.3d at 1057 (citations omitted).

### 1.    Minimum Contacts

The due process clause requires that the nonresident defendant have "minimum contacts" with the forum state.  *See OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant.  *See OMI Holdings*, 149 F.3d at 1090-91.  First, a court may exercise general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has sufficiently strong business contacts with the forum state.  *Id.* at 1091.

Alternatively, a court may exercise specific jurisdiction over a defendant if the defendant's actions in or directed at the forum give rise to the litigation.  Specific jurisdiction may be asserted over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out

---

[13]Under the statute, personal jurisdiction over a nonresident defendant may arise from, *inter alia*, (1) the transaction of any business within the state or (2) the commission of a tortious act within the state.  C.R.S. §13-1-124(1).

of or relate to' those activities."  *OMI Holdings*, 149 F.3d at 1090-91 (citations omitted).

### 2.      Fair Play and Substantial Justice

In addition to examining a defendant's minimum contacts with the forum state, a court

must also analyze whether the exercise of personal jurisdiction offends "traditional notions of

fair play and substantial justice."  *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764

(10th Cir. 2011).  This inquiry requires a determination of whether personal jurisdiction over a

defendant with minimum contacts is reasonable in light of the circumstances surrounding the

case.  In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the

forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient

and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and (5) the shared interest of the several states in furthering

fundamental substantive social policies.  *Id*.

### B.      Mr. Goldman's Contacts with Colorado

Mr. Goldman is a citizen of Canada and lives in Ontario, Canada.[14]  He currently works

as the President and Chief Compliance officer of Defendant Foundation Markets, Inc. ("FMI").

He states that although he was the nominal principal of the holding companies to which some of

the Project assets and data were transferred, he was not involved in these transactions.[15]

Specifically, he states that his role was merely to be the "administrative contact" for these

---

[14]In response to Mr. Goldman's motion, Bolsa sought and was granted leave to conduct preliminary discovery on the issue.  The following facts relating to Mr. Goldman's contacts with Colorado are derived from the Complaint, an affidavit from Mr. Goldman, and evidence submitted in connection with the briefs.

[15]According to the Complaint, Defendants Adam Szweras and Yannis Banks were the primary actors on Alpaca's side of the transactions and negotiations at issue.

entities.  He received some information from his colleagues and was copied on emails sent

between the Alpaca parties and the Colorado Defendants but did not participate in the

negotiations or communications.  He contends that he did not direct any communications toward

the Colorado Defendants, although he did participate in one conference call with one of the

Colorado Defendants, perhaps Mr. Doppler, and a potential investor regarding the Project and

the Arizona properties.  Mr. Goldman also conveyed a scoping study and other materials relating

to the Project to that same investor (the investor has no apparent connection to Colorado).

　　　As the officer and director of AGC, Mr. Goldman executed a contract with Mr. Johnson

by which AGC received some of the disputed Project assets.  In addition, as the officer and

director of Defendant AARC, Mr. Goldman executed the acquisition agreement with MRI

whereby MRI purported to convey the Project assets and data; he also sent the agreement to Mr.

Warnaars in Colorado.  At the time, Mr. Goldman had some role at Alpaca, perhaps as a director,

and executed a resolution ratifying and affirming the joint venture agreement with MRI and the

creation of the holding companies.  In his capacity as a principal of AGC and Alpaca, Mr.

Goldman also entered into the lease for the Elfrida Property (located in Arizona) with Mr.

Johnson.  In addition, FMI engaged in negotiations for various deals and transactions with

Aurelio Resource Corp., another Colorado corporation of which Mr. Warnaars was a principal.

AARC, with Mr. Goldman as principal, also entered into an agreement with Aurelio to acquire a

mining lease in June 2010.  Mr. Goldman was kept informed about the transactions at issue,

including the transfer of the Project data from the Colorado Defendants to the Alpaca

Defendants.[16]  He contends that all of these actions were taken at the behest of his colleagues, and not initiated by him.

**C.    Analysis**

**1.    Minimum Contacts**

Bolsa appears to assert personal jurisdiction based on specific jurisdiction, that is, on injuries arising out of or relating to significant activities of Mr. Goldman purposefully directed at Colorado.  Bolsa relies in particular on the agreements that the entities of which Mr. Goldman was a principal entered into with some of the Colorado Defendants, as well as specific communications with the Colorado Defendants.  Bolsa contends that Mr. Goldman is also subject to personal jurisdiction because of the actions of Defendants Szweras and Banks as his agents.  Finally, Bolsa relies on the existence of a conspiracy of which Mr. Goldman was allegedly a participant to support the assertion of jurisdiction.

**(a)    Contracts with Colorado residents**

It is well established under Colorado law that a defendant "does not subject himself to jurisdiction in the forum state merely by entering into an agreement with a resident of the forum state." *Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo.App. 2009) (citing cases).  Rather, jurisdiction may be found only if there is some other activity by the defendant in the forum state, such as negotiation in the state pursuant to substantial and significant contacts, execution by the defendant in-state, or solicitation of the contract by the non-resident defendant.  *Id*. (citations omitted); *see also East Vail Townhomes, Inc. v. Eurasian Development D.A., Inc*., 716 F.2d

---

[16]There is evidence that the Defendants associated with Alpaca were aware that the Colorado Defendants may have acquired the Project assets and data improperly but considered it worth the risk.

1346, 1348-49 (10th Cir.1983) (where agreement was negotiated and executed in Colorado, court had personal jurisdiction over nonresident) (applying Colorado law).

Here, while Mr. Goldman executed agreements in a representative capacity with various Colorado residents, Bolsa has not shown that he directed any conduct towards Colorado in connection with these agreements. There is no evidence that he solicited or negotiated the contracts or executed the agreements in-state. Moreover, the subject of the agreements had little to do with Colorado and did not call for performance in Colorado. Rather, they concern property in Arizona, not Colorado. Therefore, the mere execution of contracts with the Colorado Defendants does not demonstrate purposeful conduct directed at Colorado sufficient to establish personal jurisdiction.

### (b)    Communications with Colorado residents

It appears that Mr. Goldman was copied on emails sent between Defendants Szweras and Banks, the primary negotiators on the Alpaca side, and the Colorado Defendants. Such passive receipt of communications from others, standing alone, is not conduct directed at Colorado and is not sufficient to confer jurisdiction. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). Bolsa, however, points to evidence that Mr. Goldman sent one email to a Colorado Defendant and participated on a conference call that included one Colorado Defendant regarding the Project. These two instances, however, do not show significant activities directed at the residents of Colorado, particularly since the subject matter of all of these discussions was located in Arizona. That the another party to the communication was in Colorado was pure happenstance, based on that Defendant's unilateral choice of residence, and was unrelated to the underlying purpose of the communication or conduct giving rise to the alleged harm. *See Far*

*West Capital,* 46 F.3d at 1076 (fact that non-resident defendants had an agent in Utah to assist with negotiations did not amount to purposeful availment of privilege of conducting business in Utah; there was no evidence that defendants had hired agent because of his residence in Utah or that his Utah residence played any part in his role in the events, particularly since subject matter of dispute was in Nevada).  These slight contacts are not significant or purposefully directed at Colorado and do not suffice to establish specific jurisdiction.[17]

Alternatively, Bolsa argues that the acts of Defendants Szweras and Banks should be imputed to Mr. Goldman to establish minimum contacts because they acted as his agents.  Bolsa also appears to argue that Mr. Doppler is an agent of Mr. Goldman.  Bolsa, however, presents no evidence that these individuals were agents of Mr. Goldman, personally, as opposed to agents of the various entities involved in these transactions.  There is no evidence that Mr. Goldman himself had authority to or actually did direct the activities of these Defendants or that these Defendants engaged in the contacts with the Colorado Defendants on his behalf.  Indeed, all of the evidence shows the opposite–*i.e.*, that Defendants Szweras and Banks did not report to Mr. Goldman and he did not direct or control their activities.  Similarly, there is no evidence to show an agency relationship between Mr. Doppler and Mr. Goldman.  Therefore, the actions of these Defendants cannot be imputed to Mr. Goldman under an agency theory.

**(c)     Tortious Conduct in Colorado**

---

[17]In addition, while related to the activities causing Bolsa's alleged injuries (the improper acquisition and transfer of Bolsa's assets and data), these few communications themselves did not give rise to the harm.  This distinguishes the circumstances presented here from the case cited by Bolsa, *First Horizon Merchant Services, Inc. v. Wellspring Capital Management, LLC*, 166 P.3d 166 (Colo. App. 2007).  In *First Horizon*, a defendant's few communications in the state were sufficient to establish personal jurisdiction.  However, those communications contained misrepresentations giving rise to the alleged injuries.

Bolsa also asserts that jurisdiction is present because Mr. Goldman committed tortious acts in Colorado.  A tort is considered to have been committed in the state if the tortious conduct occurs in Colorado or when tortious conduct initiated in another state causes injury in Colorado. *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235-36 (Colo. 1992).  Bolsa states that Mr. Goldman received the Project data and used it to solicit investments, which was tortious conduct. However, there is no evidence that these actions occurred in Colorado[18] or caused injury in Colorado.  Bolsa has not shown that Mr. Goldman was in Colorado when he received or re-sent the data.  Alternatively, to the extent that the Defendants misappropriated Bolsa's materials to obtain or exploit the Project assets, this alleged tortious conduct occurred in Arizona, where those properties are located.  *Gognat*, 224 P.3d at 1053.

In addition, Bolsa argues that a tort occurred in Colorado because Mr. Goldman failed to inform Bolsa of the impropriety of the various transactions, relying on *First Horizon*.  Again, however, *First Horizon* is inapplicable.  In that case, the defendant was on a phone call with the Colorado plaintiff in which he heard but did not correct inaccurate/incomplete information communicated to the plaintiff.  166 P.3d at 176.  The alleged tortious conduct was the phone call itself, where the nonresident defendant concealed or failed to disclose material information to the resident plaintiff.  Here, however, there is no evidence of any relationship between Mr. Goldman and Bolsa, much less any direct communication between them connected to Colorado in some way.  Mr. Goldman's failure to act does not show any conduct occurring in Colorado or resulting injury in Colorado.

---

[18]Certainly it is possible that the material was *sent* from Colorado by the Colorado Defendants, but Bolsa does not allege that Mr. Goldman did this, only that he received the data and thereafter sent it to others.

(d)     **Conspiracy**

Finally, Bolsa argues that the actions of the other Defendants can be attributed to Mr.

Goldman because he was part of a conspiracy.  "The existence of a conspiracy and acts of a co-

conspirator within the forum may, in some cases, subject another co-conspirator to the forum's

jurisdiction."  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007).  However, to

assert personal jurisdiction based on a conspiracy, the plaintiff must offer more than bare

allegations, but rather must allege facts that would support a *prima facie* showing of a

conspiracy.  *Id*.  In addition, the *Melea* decision reflects the Tenth Circuit's concern about the

assertion of personal jurisdiction based on a co-conspirator's actions.  *Id*. at 1070 (noting that "to

hold that one co-conspirator's presence in the forum creates jurisdiction over other co-

conspirators threatens to confuse the standards applicable to personal jurisdiction and those

applicable to liability").  Specifically, it is questionable that this theory should apply when the

conspiracy is not directed at the forum state, no substantial steps in furtherance of the conspiracy

are taken in the forum state, and no injury resulted in the forum state.  *Id*. ("Where no injury

related to the conspiracy occurred in Colorado, and [the defendant's] only Colorado-related

action with regard to any purported conspiracy was to receive communications from Colorado,

the basis for jurisdiction is slim.").

As evidence to support jurisdiction under this theory, Bolsa relies on its allegations that

Mr. Goldman was aware of the possible impropriety of the subject transactions but did not

investigate or halt the business going forward and indeed executed key agreements facilitating

the transfer of Bolsa's Project assets and data.  In addition, Bolsa contends that Mr. Goldman's

actions in receiving and transferring some of Bolsa's Project data show that he was a part of a

conspiracy.

Even if these allegations were sufficient to show that Mr. Goldman was a participant in a conspiracy, and this is questionable, the facts presented here show that the alleged conspiracy and its object had little to do with Colorado. Rather, this case is similar to the circumstances of *Melea*. The object of the alleged conspiracy is unrelated to Colorado, in that the mining claims are in Arizona and the Project data concerns that Arizona property. There is little evidence about what conduct, if any, occurred in Colorado[19], and therefore no evidence that any substantial steps in furtherance of the conspiracy were taken in Colorado. As in *Melea*, the only reason for Mr. Goldman's contacts with Colorado is that other alleged participants of the conspiracy happen to be residents of the state; moreover, most of the alleged communications were directed from Colorado to Mr. Goldman, not in the other direction. Given Mr. Goldman's few purposeful contacts with Colorado, the minimal showing of his involvement in a conspiracy, and the lack of a substantial connection between the conspiracy or its object and the forum, the assertion of jurisdiction based on the actions of co-conspirators does not appear to be consistent with due process. Therefore, the Court does not rely on Mr. Goldman's alleged involvement in a conspiracy as a basis for asserting personal jurisdiction over him.

### 2.      Fair Play and Substantial Justice

Although Bolsa has not shown that Mr. Goldman has sufficient minimum contacts to

_____

[19]Bolsa alleges that some of its Project data was stored in Colorado and some at the Elfrida property in Arizona; it is unclear whether the data sent to the Alpaca Defendants was obtained or sent from Colorado. In addition, Bolsa alleges that its "offices" were broken into and materials stolen but does not identify where those offices were located. Finally, although the Colorado Defendants are residents of Colorado, there is little evidence about where they were when they committed their alleged wrongful conduct.

establish personal jurisdiction, the Court nonetheless will proceed to the second step of the

analysis and determine whether the exercise of jurisdiction would be reasonable.  The relevant

factors include (1) the burden on the defendant, (2) the forum state's interest in resolving the

dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the

shared interest of the several states in furthering fundamental substantive social policies.

     Applying the first factor, there would be some burden on Mr. Goldman in having to

litigate in Colorado.  He is a citizen of Canada with no apparent connection to Colorado.

However, because of electronic filing and other technology used in court proceedings the

burdens of travel and other inconveniences for out-of-state litigants are somewhat lessened.

Bolsa has agreed to conduct depositions of the Canadian residents in Canada and so there would

be little burden on the Defendant until trial.  Therefore, this factor weighs only slightly against

proceeding in this forum.

     The second factor and third factors, Colorado's interest and the Plaintiff's interest in

litigating in Colorado, do not weigh in favor of the exercise of jurisdiction.  As has been noted,

although several Defendants are Colorado residents, the activities underlying this litigation have

little connection to Colorado.  Similarly, Bolsa does not have a significant relationship to

Colorado or apparent interest in litigating in this forum.  Bolsa does have an interest in efficient

litigation of its claims in a single forum and an interest in obtaining complete relief.  However,

there may be other jurisdictions in which all the Defendants, including Mr. Goldman, could be

haled into court, including Arizona or Canada.  Finally, given the apparent peripheral

involvement of Mr. Goldman personally, as opposed to the entities he represented (who do not

contest jurisdiction), it appears that Bolsa can obtain complete relief even without Mr. Goldman's presence in the litigation.

There is little showing with respect to the fourth and fifth factors by either party and the Court concludes that neither of these factors weighs significantly in either direction.

Given this analysis, even if Bolsa could show that Mr. Goldman had sufficient minimum contacts, the exercise of jurisdiction over him would not be reasonable; this provides an alternative basis for granting his motion to dismiss.

**IT IS THEREFORE ORDERED**

(1)     Defendants Frederik Warnaars and International American Resources, Inc.'s Motion to Dismiss Verified Amended Complaint (#**49**) is **DENIED**;

(2)     Defendant David Stafford Johnson's Motion to Dismiss (#**50**) **GRANTED IN PART AND DENIED IN PART**.  The motion is granted as to the First and Second Claims for relief asserted against Mr. Johnson, which are hereby stayed and shall be arbitrated in accordance with the parties' agreement.  The motion is denied as to the remaining claims.

(3)     Defendant Jeremy Goldman's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) (#**52**) is **GRANTED**.  The claims asserted against Mr. Goldman are dismissed

without prejudice for lack of jurisdiction.

Dated this 20th day of December, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge